FIRST DEPARTMENT, JULY, 2000

(July 6, 2000)

■ DUANE READE, INC., Respondent, v READE BROADWAY
ASSOCIATES, Appellant. [710 NYS2d 566] —Order, Supreme Court,
New York County (Barbara Kapnick, J.), entered on or about
November 13, 1998, which, to the extent appealed from, denied
portions of defendant's cross-motion to dismiss the complaint,
unanimously reversed, on the law, with costs, the cross-motion
granted and the complaint dismissed. The Clerk is directed to
enter judgment in favor of defendant-appellant dismissing the
complaint.

Plaintiff Duane Reade is a commercial tenant at 305
Broadway. Defendant is the landlord. The parties entered into
a lease executed in January 1996 providing for the tenant's
leasing of two units in the building, identified as Store A and
Store B. The tenant had actually occupied Store A for a number
of years under prior agreements, and the occupancy would be
continued under the new lease. However, occupancy of Store B
would be new under the new lease. At the time of the lease,
Store B was occupied by another tenant, Norma's Restaurant.
Plaintiff tenant's lease of that premises was timed to com-
mence as Norma's lease expired on January 31, 1998. When
the landlord gave Norma's notice in or around December 1997
that its lease would not be renewed, Norma's indicated that it
was not immediately prepared to relocate. In fact, when the
lease expired, Norma's remained in possession and the landlord
commenced a holdover proceeding. That proceeding was settled
by a stipulation dated March 5, 1998 between the parties which
included a judgment of possession entered in favor of the
landlord. A warrant of eviction was issued, execution stayed
until June 30, 1998. In the meantime, plaintiff had commenced
the present action to gain possession and to recover damages
for lost profits.

There is no dispute that Norma's did vacate by June 30, 1998, and plaintiff then took possession. While plaintiff's cause of action for specific performance was dismissed, the claim for lost profits for the period from January 31, 1998, when the lease for Store B was to commence, to June 30, 1998 remains.

The lost profits claim turns on a straightforward application of contract law. Paragraph 23 of the subject lease provides that "[i]f owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants * * * [o]wner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances." Clause 40 of the rider to the lease provides that "[u]pon the expiration * * * of the B lease *and surrender of such space by the existing tenant*, Landlord will promptly * * * deliver same to Tenant for occupancy * * * Landlord agrees to take *all reasonable steps* to assure that Tenant will get possession of store B as soon as possible after the expiration of the B Lease, including commencement of eviction proceedings if necessary" (italics added).

The motion court found unresolved factual issues in connection with, *inter alia*, whether the landlord took "all reasonable steps." However, the delay was caused by a holdover tenant, and the landlord expeditiously commenced a holdover proceeding and promptly entered a stipulation ensuring the holdover's vacatur, with only a five-month delay, which in all likelihood prevented additional delay arising from completion of the holdover proceeding and recovery of possession of the premises. Contrary to plaintiff's argument, there is no assurance that litigating the holdover proceeding instead of settling would have given landlord earlier possession of the premises. The trial court had the discretion to stay execution of the warrant of eviction to give the tenant sufficient time to relocate in light of the fact that the tenant had done extensive renovation to the premises under a belief that the lease would be renewed. A period of approximately five months for the owner to recover possession of commercial realty while litigation occurs in the Civil Court is not an unreasonable amount of time.

Clause 40 continues: "The term 'demised premises' as used in this lease shall mean store A until Delivery of store B and thereafter shall mean both store A and store B *unless the context requires otherwise.*" The motion court found this latter language ambiguous as applied to whether paragraph 23 and clause 40 could apply to relieve the landlord of responsibility

for lost profits for failing to timely deliver store B. To a certain extent, the part of the sentence preceding the qualifier "unless," if narrowly construed, might be seen as less than clear and even illogical: there being no delivery of store B, how could the remainder of clause 40 and paragraph 23 be triggered? Hence, the court denied summary judgment. However, there are two reasonable readings of this sentence that warrant our upholding of the construction advanced by the landlord. First, the qualification at the end of this sentence of clause 40 allows all of these clauses to be read in a manner that makes sense: the general context of the phrase defining demised premises differs from the specific context addressed elsewhere by paragraph 23 and clause 40 where a holdover tenant, through no fault of the landlord, prevents timely delivery of the premises, but the landlord, nevertheless, takes timely, appropriate steps to ensure delivery. The qualifying language allows us to sensibly interpret "demised premises" as per a specific context. In this context, then, and under these circumstances, the landlord is contractually relieved of liability.

Another way of looking at clause 40 leads us to the same result. The terms of paragraph 23 relieve the landlord of liability when delivery of the premises is impeded by, among other things, a holdover tenant. But plaintiff was already in possession of store A, rendering the term superfluous. So the rider provision, modifying the lease, logically must apply to the delivery of store B. A part of the rider provision, defining the demised premises, should not be read to render illogical the remainder of that rider provision and the related clause in the lease.

Accordingly, we reverse on the basis of the contractual language. Concur—Sullivan, P. J., Nardelli, Tom, Lerner and Andrias, JJ.